BUTLER BROTHERS *v.* UNITED STATES

**No. 7872.**
Entry Nos. 1263; 3476; 2051.

(Decided August 29, 1950)

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *Joseph Schwartz* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Dorothy C. Bennett* and *Chauncey E. Wilowski,* special attorneys), for the defendant.

EKWALL, Judge: This case involves three appeals for reappraisement from the appraiser's finding of value on various items of "bubble

glassware" from Mexico entered at the port of Laredo, Tex. The merchandise was appraised at values higher than the invoiced and entered values on the theory that there was no statutory foreign or export value for identical merchandise, except as to those items which were appraised as entered. This appraisal was based on foreign or export value (both being the same) of what the appraiser considered similar glassware produced and sold by another manufacturer in Mexico. (Section 402 (c) and (d).) It is contended on behalf of the importer, the plaintiff herein, that the invoice and entered prices represent the foreign and export value of "such" or identical glassware. It is further contended that the glassware in suit is not such or similar to the glassware which formed the basis for appraisement.

The manufacturer of the instant merchandise was Fabrica Nacional de Vidrio, S. A., referred to hereinafter as Fabrica Nacional. The appraised values were based upon list prices of glassware manufactured by El Nuevo Triunfo, Bernabe Tovar y Hno., of Mexico, which will be hereinafter referred to as Tovar.

Plaintiff at the trial offered and there was received in evidence an affidavit of the general manager of Fabrica Nacional (exhibit 1).

On behalf of the Government there were offered and received in evidence illustrative samples of some of the items before the court taken from importations of bubble glassware manufactured by Fabrica Nacional (collective illustrative exhibit 2), together with a foreign report relating to glassware manufactured by Fabrica Nacional (exhibit 3), and a foreign report of a Treasury representative with accompanying exhibits consisting of Tovar's price list No. 10 and a statement by the proprietor of the Tovar factory that the said list prices were in effect from July 1943 to August 15, 1948 (collective exhibit 4). The instant merchandise was exported between August 1943 and November 1944. The Government also produced in evidence and there were admitted as collective exhibit 5, (a) a telegram from a member of plaintiff's firm to American Customs Dispatch Co., advising said company to notify the United States appraiser that plaintiff believed its purchases of glassware from the exporter herein were on an exclusive arrangement basis, and (b) a letter from plaintiff to said American Customs Dispatch Co. stating that plaintiff formerly bought from Tovar but that Tovar was not in a position to handle such orders at Tovar's former prices since early in 1942; that therefore plaintiff contacted Fabrica Nacional who accepted the business with the understanding that it would manufacture for the plaintiff's firm the type of glassware here involved as long as plaintiff could absorb its production. There was also received in evidence defendant's collective illustrative exhibit 6, consisting of seven illustrative samples of bubble glassware manufactured by Tovar; defendant's collective exhibit 7, consisting of a price list published by Tovar covering bubble

glassware manufactured by it, and defendant's collective exhibit 8, Tovar's price list as obtained from the Customs Information Exchange.

The affidavit of the general manager of the exporting firm (exhibit 1) states that the glassware here involved was not first-class or standard merchandise but was made from scrap glass (collet) and was greatly inferior to glassware produced directly from raw materials by other glass factories in Mexico, and because of that, the instant merchandise sold at prices lower than those asked for standard glassware. Affiant further stated that the glassware in suit was freely offered for sale to all purchasers in the City of Mexico, one of the principal markets therefor, in the ordinary course of trade, at the prices at which it was sold to the plaintiff, which prices included the cost of all containers and other coverings and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States; and that such glassware was offered to all purchasers, whether for exportation to the United States or for home consumption, at the same prices as sold to the plaintiff.

The affidavit also stated that although the plaintiff herein purchased the major portion of such glassware produced by Fabrica Nacional, there was no exclusive agreement between the two concerns under which the manufacturer was obligated to sell this glassware exclusively to the plaintiff, but said manufacturer was free to sell such glassware to all other purchasers and actually did sell the same to other purchasers in Mexico, both for home consumption and for exportation to the United States, at the same and even lower prices than the sales to the plaintiff.

The appraiser at Laredo, who at the time of these entries was customs examiner and examined the instant merchandise, testified on behalf of the Government. His testimony, based upon 20 years' experience in that line, during which time he had examined several hundred carloads of glassware, including about 10 carloads of Mexican bubble glassware per annum, was that the samples (collective illustrative exhibit 2) are truly representative of the Fabrica Nacional's bubble glassware generally. His understanding of the term "bubble glassware" is that "It is glassware that in the process of manufacture there are bubbles of air—It is usually imperfect in shape and form, and is made partly from old glassware, broken bottles." This witness stated that in his official capacity of over approximately 20 years he had examined importations of bubble glassware produced by the Tovar factory, including items of the same class as collective illustrative exhibit 2; that said Tovar factory was the largest Mexican shipper of this type of glassware. He produced seven samples of bubble glassware manufactured by Tovar which he stated were of the same general class as collective illustrative exhibit 2 and they were received in evidence as collective illustrative exhibit 6. He

testified that these samples are truly representative of the Tovar factory's general line of bubble glassware, as to quality, workmanship, and material, and that, based upon his 20 years' experience, the products of the two factories, Fabrica Nacional and Tovar, are similar in design, in their imperfections, and in material, and are commercially interchangeable and adapted to the same use; that both are made from the same materials, in the same manner, both being known as bubble glassware, and include items of the kind illustrated in collective illustrative exhibit 2 and collective illustrative exhibit 6 before the court.

In his official capacity this witness had made inquiries as to the list prices and other valuation data relating to the sale of the Tovar factory's bubble glassware. He produced Tovar's price list, which was admitted into evidence as collective exhibit 7. He also received the same price list from the Customs Information Exchange, which was offered and received into evidence as collective exhibit 8. He stated that the price list (collective exhibit 7) governed sales of Tovar's glassware in the home market and for export to the United States.

Upon cross-examination the witness stated that the appraisal of the instant merchandise was based upon the selling price of the Tovar glassware. He stated that the samples of the instant merchandise were not symmetrical; that while bubble glassware may be perfectly round and symmetrical, the ware imported from Mexico was not of that character. In the course of his long experience he had seen nearly all of the items in Tovar's price list during the time he was examiner, from July 1, 1943, up to March 1, 1948, and when he became appraiser he had returned the values of Tovar glassware like collective illustrative exhibit 6 in accordance with the prices in the price lists (collective exhibits 7 and 8).

The United States examiner at the port of Laredo from 1943 to 1947, who had examined bubble glassware from Mexico at that port during the period mentioned, testified that he examined approximately 10 entries per month, each entry consisting of from 6 or 7 crates to possibly a carload; that he obtained his advisory values from the Tovar price list (collective exhibit 7 herein) and gave the item numbers in that list which corresponded to items on the instant invoices. He stated that there is a wide variation between the various pieces of the same item number in the same crate of merchandise. From his experience in handling both Tovar and Fabrica Nacional merchandise, he stated that they were similar, being made of practically substantially the same material, were considered commercially interchangeable, were adapted to similar uses, and that neither was superior in workmanship. While he had never visited the factories of these concerns in Mexico, from information he received he understood that the bubble glassware from both factories was

made from glass waste. Not all Mexican bubble glassware is of the same quality, character, workmanship, and design. There are other manufacturers in Mexico that make bubble glassware which differs considerably from that produced in the two factories mentioned. As to the items on the invoices which were not advanced in value, this witness stated that there were no similar items on Tovar's list.

The value found by the appraiser is presumed to be the value of the merchandise and the burden is on the plaintiff to prove otherwise. (Section 501, Tariff Act of 1930.) Plaintiff in order to overcome such presumption must show as to such or similar merchandise (1) the foreign value and (2) the export value in order that the higher of these two values may be determined; or show (1) a foreign value and the nonexistence of an export value, or (2) the export value and the nonexistence of a foreign value. *United States* v. *T. D. Downing Co. et al.*, 20 C. C. P. A. (Customs) 251, 253, T. D. 46057.

The importer's proof in the instant case consists solely of the affidavit of the general manager of the exporting company, the pertinent portions of which are summarized above. This affidavit is unaccompanied by price lists or other evidence of sales or offers to sell, and standing alone is entitled to little weight. *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 964, Reap. Dec. 5272; *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093; *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 C. C. P. A. (Customs) 19, C. A. D. 118; *Charles Happel, Inc., a/c Mon Fong Wo Co.* v. *United States*, 23 Cust. Ct. 250, Reap. Dec. 7715.

The affidavit contradicts statements in the Government exhibits (exhibit 3 and collective exhibit 5) in that it states no exclusive agreement exists between the exporter and importer herein, whereas the report (exhibit 3), based upon examination of the records of the exporter and statements furnished the Government representative by the affiant, states that an oral agreement did exist between the exporter and the importer to confine sales to this importer for export to the United States. Moreover, exhibit 3 indicates that the exporter's entire production was restricted to the importer herein, and that such or similar merchandise was not offered or sold to any other purchaser in the United States; that although the understanding did not restrict sales in Mexico, the exporter's production was not even sufficient to meet plaintiff's needs; therefore, no other offers for sale were made. The report further stated that the exporter and importer herein had a peculiar method of fixing prices between themselves. It is difficult to understand the basis for the plaintiff's contention that "such" merchandise was freely offered for sale to all purchasers at the same prices as the entered price of this merchandise, where the evidence clearly shows that the entire production of the exporter was restricted to the plaintiff in which event it could have nothing to sell.

Certainly it would not attempt to sell something that had already been sold or contracted for.

From the record we find:

1. That the merchandise consists of bubble glassware exported from Mexico between the dates of August 22, 1943, and November 8, 1944.

2. That the sales of the bubble glassware here involved were restricted to the plaintiff.

We conclude from the record:

1. The plaintiff has failed to overcome the presumption of correctness of the appraised values.

2. The plaintiff has failed to establish a foreign or export value different from the appraised value.

3. The evidence supports the appraised values.

Judgment will be entered accordingly.